UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| KEVIN R. PETRO, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:23-cv-00132-JPH-MJD ) |
| CHRIS LANE Sheriff, et al., | ) ) |
| Defendants. | ) ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Kevin R. Petro, an Indiana Department of Correction ("IDOC") inmate, filed this action under 42 U.S.C. § 1983 based on allegations that defendants Transport Officer Forney and Sherriff Matthew Myers violated his constitutional rights when he was being transported for a court hearing. Dkt. 2. Defendants have moved for summary judgment. Dkt. 45. For the reasons that follow, their motion is **granted**.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility

1

determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Plaintiff failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts).[1]

---

[1] Some of the Court's orders were returned in December 2024 as undeliverable because Mr. Petro had transferred facilities and not provided an updated address with the Court. Dkts. 50–52. However, Defendants served their summary judgment materials to Mr. Petro at Miami Correctional Facility, where he is currently housed. Dkt. 48 at 7.

2

Mr. Petro's failure to respond does not change the summary judgment standard; "the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up). As discussed below, however, Mr. Petro's failure to respond is critical with respect to the affirmative defense that Defendants are shielded from Eighth Amendment liability by qualified immunity. "Once the defense is raised, it becomes the plaintiff's burden to defeat it." *Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021).

## II.
## Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Petro and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. The parties

During the time in question, Mr. Petro was incarcerated at Putnamville Correctional Facility (PCF) serving a twelve-year sentence. Dkt. 45-1 at 17, 41. (Petro Dep.). On November 1, 2022, Mr. Petro was transported to Bartholomew County Jail for a court hearing the following day. Dkt. 45-3 at 1; dkt. 45-1 at 18.

At all relevant times, Transport Officer Michael Forney was a jail officer for the Bartholomew County Sheriff's Office. Dkt. 45-3 at 1 (Forney Decl.). His duties included picking up incarcerated individuals at IDOC facilities and

transporting them between prisons, county jails, and hearings. *Id.*; dkt. 45-7. He received forty hours of training to become a transport officer. *Id.*

Sheriff Matthew Myers was the former sheriff of Bartholomew County during the time in question. Dkt. 47 at 1. Currently, Chris Lane holds the role of Bartholomew County Sheriff.[2] *Id.*

### B. Relevant transport polices

During training, transport officers at Bartholomew County are taught standard procedures for inmate restraint, seating inmates, and the use of seatbelts. Dkt. 45-4 at 2 (Decl. of Jail Captain Timothy Burdine). Transport officers are expected to drive safely and obey all traffic laws. *Id.*

Bartholomew County policy dictates that "[i]nmates will wear a seatbelt; whenever possible or safe for the officers to secure restraint." *Id.* at 6. Bartholomew County transport vans all have lap seatbelts. *Id.* at 2. However, in a transport van, it is unsafe for an officer to climb into the seating compartment to buckle inmates' seatbelts because: 1) the compartment is too small for the officer to stand face-to-face and buckle the inmate; and 2) this creates a security risk because if the officer is that close to buckle the inmate, the inmate could potentially harm the officer. *Id.* at 2–3. Transport officers are therefore trained not to climb into the seating area of the vans to secure seatbelts. Dkt. 45-3 at 3; dkt. 45-4 at 2–3. An inmate can, however, fasten his own seatbelt because his hands are only secured with a belly chain. *Id.*

---

[2] Because the Sheriff is being sued in his official capacity only, the Court substitutes Chris Lane for Matthew Myers. Fed. R. Civ. P. 25(d).

### C. Mr. Petro's transport and injury

On November 1, 2022, Transport Officer Forney picked Mr. Petro up from PCF to transport him to the Bartholomew County Jail. Dkt. 45-3 at 1. Mr. Petro was seated in the rear compartment of the transport van, which generally meant a rougher ride. Dkt. 45-1 at 42–43; dkt. 45-3 at 2–3. Transport Officer Forney did not tell Mr. Petro that he could use a seatbelt, and Mr. Petro was unaware that he could secure it himself. Dkt. 45-1 at 35–36.

Transport Officer Forney took a route that avoided interstates and required taking numerous turns, detours, and backroads. *Id.* at 45–46. When asked about whether he had concerns related to Officer Forney's driving, Mr. Petro stated that there was "[j]ust a lot of stopping going on, like I said, and twists and turns. I mean, I just thought it was a normal trip to court." *Id.* at 50.

Mr. Petro identifies two incidents involving Transport Officer Forney's driving that alarmed him. *Id.* at 50–51, 62–63. Both incidents happened within a few minutes of the other. Dkt. 45-3 at 4. During the first incident, Transport Officer Forney was following a vehicle that braked erratically. *Id.* To avoid a collision, Transport Officer Forney slammed on his brakes suddenly which required Mr. Petro to brace himself. *Id.*; Dkt. 45-1 at 50–51.

Shortly thereafter, Transport Officer Forney was driving behind a line of dump trucks when one of the trucks in front of him collided into another. Dkt. 45-3 at 4. Transport Officer Forney yelled, "hang on," swerved the vehicle right, and forcefully applied the brakes to avoid colliding with the other

5

vehicles. *Id.* at 4–5. Mr. Petro then hit his head against the inside of the transport van which caused a laceration on his head. Dkt. 45-1 at 62–63; dkt. 45-3 at 5. Transport Officer Forney asked if Mr. Petro was okay. Dkt. 45-1 at 62. Mr. Petro replied that he was okay. *Id.* Because of the force of the impact, Mr. Petro stated that although he said he was "okay," he was stunned and stared off into space after the incident. *Id.* Because Mr. Petro was still conscious and talking, Transport Officer Forney decided to continue to the Johnson County Jail where medical staff could assess his injuries. Dkt. 45-3 at 5.

When they arrived at the jail, a nurse cleaned Mr. Petro's cut and put a bandage on the wound. *Id.* Transport Officer Forney also took photos of Mr. Petro's injuries. *Id.* Transport Officer Forney then contacted his supervisor, Lieutenant Burdine, to report the incident. *Id.* Lieutenant Burdine directed Transport Officer Forney to continue on with his route. *Id.*

Transport Officer Forney then loaded Mr. Petro and another inmate into the transport van and traveled to Brown County Jail to pick up another inmate. *Id.* Upon arriving at Bartholomew County Jail, Mr. Petro was again examined by another jail nurse who ordered that Mr. Petro be examined at the hospital. *Id.* Transport Officer Forney then took Mr. Petro to the hospital, waited with him while he was evaluated, and returned him to the Bartholomew County Jail after he was discharged. *Id.* at 5-6. The next day, Transport Officer Forney wrote a case report detailing the incident. Dkt. 45-3 at 13-14.

6

### D. Claims

The Court screened Mr. Petro's complaint and allowed the following claims to proceed: (1) a deliberate indifference claim against Transport Officer Forney in his individual capacity; and (2) a *Monell* claim against Sheriff Lane in his official capacity for failure to train. Dkt. 13.[3]

### III.
### Discussion

### A. Deliberate indifference

Defendants argue there is no designated evidence showing that Officer Forney was deliberately indifferent to Mr. Petro's safety by failing to tell him to buckle his seat belt or by braking hard to avoid an accident. Dkt. 47 at 15–17.

The Eighth Amendment's proscription against cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain" by the state. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). The deliberate indifference standard generally applies to cases alleging failures to safeguard the inmate's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). The deliberate indifference standard involves a two-pronged test: (1) the prisoner must be exposed to "a substantial risk of serious harm," and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety. *Farmer*, 511 U.S. at 834, 837–38.

---

[3] The Court also allowed a deliberate indifference claim against Nurse Webster to proceed, but the Court granted her unopposed motion for summary judgment. Dkt. 44.

7

Here, Mr. Petro claims that Transport Officer Forney was deliberately indifferent to his safety by not telling him to buckle his seatbelt. While it's undisputed that Transport Officer Forney did not tell Mr. Petro to buckle his seatbelt, "failing to seat-belt a shackled inmate does not pose a substantial risk of serious harm." *Smith v. Price*, No. 1:21-cv-00373, 2024 WL 278143, at *9 (S.D. Ind. Jan. 25, 2024) (finding that a transport officer was not deliberately indifferent when he quickly braked because "without reckless driving or other exacerbating circumstances, failing to seat-belt a shackled inmate does not pose a substantial risk of serious harm"); *see also Dale v. Agresta*, No. 1:15-cv-0140, 2017 WL 5517384, at *5 (S.D. Ind. Nov. 16, 2017) ("[F]ailure to provide a seatbelt—without more—does not constitute an Eighth Amendment violation . . . ."), *aff'd*, 771 F. App'x 659 (7th Cir. 2019). And as discussed further below, there is no designated evidence that Transport Officer Forney acted with deliberate indifference to Mr. Petro's safety in driving the transport van or that he caused Mr. Petro to hit his head on purpose. Dkt. 45-1 at 62.

There is no designated evidence showing that Transport Officer Forney was driving recklessly or unlawfully when Mr. Petro fell forward and hit his head. On the contrary, the designated evidence shows that Transport Officer Forney swerved and braked hard to avoid crashing into a vehicle in front of him after two other vehicles collided. Dkt. 45-3 at 4–5. To avoid summary judgment, Mr. Petro must designate evidence from which a jury could reasonably find that Transport Officer Forney's driving was reckless and therefore deliberately indifferent to Mr. Petro's safety. *See Brown v. Fortner*,

8

518 F.3d 552, 559 (8th Cir. 2008) (finding driver's refusal to fasten inmate's seatbelt, driving in excess of speed limit, and following too closely (among other things) sufficient to show deliberate indifference to inmate's safety); *see also Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013) (concluding that allegations that inmate sustained injury because driver of prison van stopped abruptly even though he knew inmate was shackled, handcuffed, and not secured with a seatbelt presented "a nonfrivolous argument" that driver violated the Eighth Amendment); *Taylor v. Stateville Dep't of Corrs.*, No. 10 C 3700, 2010 WL 5014185, at *1 (N.D. Ill. Dec. 1, 2010) (explaining that allegations that inmates repeatedly "slammed" into each other during transport, with enough force to cause injury, suggests reckless driving).

In the absence of designated evidence showing that Transport Officer Forney was driving recklessly or unlawfully, no reasonable jury could find that he was deliberately indifferent to Mr. Petro's safety in violation of his Eighth Amendment rights. *See Smith*, 2024 WL 278143 at *9. As such, Transport Officer Forney is entitled to summary judgment.[4]

### B. Sheriff Lane

The Court turns to whether Sheriff Lane is entitled to summary judgment on Mr. Petro's claim against him in his official capacity.

To maintain a § 1983 *Monell* claim against Sheriff Lane in his official capacity, Mr. Petro must show that he was deprived of a federal right and that

---

[4] Because Mr. Petro cannot show that Transport Officer Forney was deliberately indifferent to his safety, the Court need not address Defendants' argument regarding qualified immunity. Dkt. 45 at 2.

9

the deprivation was caused by a Sheriff's Department custom or policy or failure to implement a needed policy. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021); *Monell v. Dep't. of Social Servs.*, 436 U.S. 658, 694–95 (1978). Here, Mr. Petro cannot show that his constitutional rights were violated when he hit in his head in the transport van driven by Transport Officer Forney. And he has not designated evidence that his injury was due to the Sheriff's failure to train Transport Officer Forney. *Flores v. City of South Bend*, 997 F.3d 725, 733 (7th Cir. 2021) ("A municipality can be held liable under a theory of failure to train if it has actual knowledge of a pattern of criminally reckless conduct and there is an obvious need to provide training to avert harm."). Therefore, he cannot prevail on a *Monell* claim against the Sheriff. Sheriff Lane is entitled to summary judgment.

## IV.
## Conclusion

**The clerk is directed** to substitute Chris Lane for Matthew Myers with respect to the official capacity claim against the Sheriff. Fed. R. Civ. P. 25(d). Transport Officer Forney and Sheriff Lane's motion for summary judgment, dkt. [45], is **GRANTED**.

Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 9/12/2025

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

KEVIN R. PETRO
146976
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Inmate Mail/Parcels
3038 West 850 South
Bunker Hill, IN 46914-9810

All Electronically Registered Counsel